**In re Sharon N. MILLER, Debtor.**

**Sharon N. MILLER, Plaintiff/Appellee,**

v.

**Gerald GENTRY, Ph.D., and Micheline Z. Burger, Defendants/Appellants.**

No. 93–4221–SAC.
Bankruptcy No. 93–40057.
Adv. No. 93–7019.

United States District Court,
D. Kansas.

June 3, 1994.

716

Jan M. Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, KS, for Sharon N. Miller.

Micheline Z. Burger, Olathe, KS, pro se and for Gerald Gentry, Ph.D.

Robert L. Baer, Trustee, Cosgrove, Webb & Oman, Topeka, KS.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy appeal arises out of an adversary proceeding in which the bankruptcy court entered an order denying Gerald Gentry, Ph.D., and Micheline Z. Burger's (defendants/appellants) motion for summary judgment and granting Sharon N. Miller's (plaintiff/appellee) cross-motion for summary judgment. In its September 29, 1993, memorandum of decision, the bankruptcy court determined that Miller's obligations to pay certain fees owed to the appellants are dischargeable.

In short, this case presents the issue of whether fees incurred during a divorce proceeding for a guardian ad litem to represent Miller's children's interests and/or a mental health professional to evaluate the Miller children and family are dischargeable in bankruptcy. Based upon recent Tenth Circuit precedent, the court is compelled to conclude that these fees are nondischargeable under 11 U.S.C. § 523(a)(5).[1]

### Uncontroverted Facts

The essential facts of this case are undisputed. In 1991, Sharon Miller was embroiled in an acrimonious divorce action in the District Court of Johnson County, Kansas. The Millers have four children. In that action, Burger was appointed as guardian ad litem. In that same action, Gentry was appointed as a psychologist to evaluate the Miller family.

Following a divorce hearing, on December 19, 1993, a Decree of Divorce was entered. That decree reserved for later determination the child custody, financial, and property division issues. On January 8, 1993, the state district court issued a memorandum opinion deciding those issues taken under advisement in the December 19, 1993, Decree of Divorce. The January 8, 1993, memorandum opinion provided, *inter alia*,[2] that Burger was to be paid $3,000 from funds escrowed in

1. Section 523(a)(5) provides in pertinent part that a debt incurred "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record" is not dischargeable to the extent that the debt "is actually in the nature of alimony, maintenance, or support."

2. In the January 8, 1992, memorandum opinion, the district court determined that Sharon Miller had an income capacity of $18,000 per year, while her ex-husband, Dr. Miller, had an annual income of $175,000 per year. Dr. Miller was ordered to pay maintenance in the amount of $2,000 per month, plus child support in the amount of $2,908 per month. Dr. Miller was also required to pay $10,000 of Sharon Miller's attorney's fees, which amounted to more than $23,000.

The court also determined that joint custody of the children was in the best interests of the child, although Sharon Miller was given primary residential custody. A rigid schedule of visitation for Dr. Miller was also established.

On page 9 of the January 8, 1992, memorandum opinion, the court noted that "[t]he parties have accumulated significant amounts of debt. Each testified that they were contemplating bankruptcy, so a division of debt may be somewhat meaningless, but the following orders are made regarding the division of debts." The court then proceeded to allocate the Millers' debts.

the clerk's office and an additional $6,000, of which Miller was to pay $2,000 and her ex-husband, Dr. Stephen Miller, was obligated to pay the balance. The memorandum opinion also provided that Miller was to pay Gentry $1,567 for the services he had provided and that Dr. Miller was to pay $3,133. Counsel for Dr. Miller was requested to draft a decree of divorce reflecting the findings of the court.

On March 6, 1992, an order titled "Decree Determining Custody, .Support, and Division of Assets" was filed. That order essentially restates the same findings found in the January 8, 1993, memorandum and order. The order reconfirms that Miller owed Burger $2,000 for guardian ad litem fees and that Miller owed Gentry $1,567.00 for psychology services rendered during the divorce proceeding.

On May 22, 1992, a journal entry of judgment was entered in favor of Burger and Gentry in the amounts ordered in the March 6, 1992, Decree. The journal entry also states that each of these debts, "being in the nature of support on behalf of the parties' minor children, is specifically not dischargeable in bankruptcy." No appeal from that order was taken.

On January 15, 1993, Sharon Miller filed her petition in bankruptcy. After filing for bankruptcy, Miller filed an adversary proceeding to obtain a determination that the debts she owed to Burger and Gentry were dischargeable. Following a pretrial conference, Burger and Gentry filed a timely motion for summary judgment. In that motion, Burger and Gentry argued that the issue of dischargeability had previously been decided by the state district court, and, consequently, Miller was barred from relitigating that same issue under principles of collateral estoppel. In the alternative, Burger and Gentry argued that Miller's debts to each of them were nondischargeable under § 523(a)(5).

Miller sought and obtained two extensions of time to respond to that motion for summary judgment and to file her own motion for summary judgment. On July 23, 1993, after the second extension of time for Miller to respond had expired, Burger and Gentry filed a motion to enter judgment in their favor based upon Miller's failure to act. On July 30, Miller filed another motion for extension of time and simultaneously filed her motion for summary judgment.

On September 29, 1993, the bankruptcy court issued its memorandum of decision. The bankruptcy court first rejected the defendant's arguments that the court should enter judgment as a sanction for delay in filing a response to the defendants' motion for summary judgment and for the delay in filing her cross-motion for summary judgment. The bankruptcy court concluded that "[r]uling against the debtor without regard to the actual merits of the case but as a sanction for her counsel's transgressions would neither be just or equitable." The bankruptcy court therefore considered the cross-motions for summary judgment on the merits.

Turning to the issue of collateral estoppel, the bankruptcy court concluded that the state district court's declarations on the issue of dischargeability are not binding.

> The debtor had not yet filed a bankruptcy petition and had no true incentive to contest the question, and thus the court's statements merely offered an advisory opinion. *See NEA–Topeka, Inc. v. USD No. 501,* 227 Kan. 529, 531–32, 608 P.2d 920 (1980); *State ex rel. Hopkins v. Grove,* 109 Kan. 619, 620–27, 201 P. 82 (1921). Furthermore, if the debtor agreed to have the finding of nondischargeability included in the judgment, the agreement would probably not be enforceable because 11 U.S.C.A. §§ 524(c) and 727(a)(10) control the way a debtor can waive the discharge of one or more debts and those provisions were not complied with.

Memorandum of decision at 6. Based upon the Tenth Circuit's decision in *In re Sampson,* 997 F.2d 717, 722 (10th Cir.1993), the bankruptcy court concluded that the language in the state district court's judgment which labels the obligations as nondischargeable support did not conclusively bind it to that finding.

The bankruptcy court then concluded that Miller's obligations to Burger and Gentry were dischargeable.

In determining whether the debtor's obligations are nondischargeable support, the court must begin by reviewing the language of § 523(a)(5). In pertinent part, the statute excepts from discharge an individual's debt which is:

to a spouse, former spouse, or child of the debtor, for ... support of such ... child, in connection with a separation agreement, divorce decree or other order of a court of record, ... but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise.

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The court certainly has some difficulty understanding how a debt owed to some third party could be viewed as being a debt "to a spouse, former spouse, or child of the debtor." Nevertheless, courts have reached opposing conclusions when deciding whether fees incurred during a divorce proceeding for a guardian ad litem to represent a child's interests or a mental health professional to evaluate a child and family are rendered nondischargeable by this language.

One view, represented by the decision in *In re Lockwood,* 148 B.R. 45 (Bkrtcy. E.D.Wis.1992), holds that such fees are nondischargeable. That case, like others agreeing with it, concludes that an obligation need not be owed directly to the debtor's spouse or child in order to be excepted from discharge as a debt for alimony, maintenance or support. Instead, it is sufficient if the debt was incurred for the benefit of a spouse or child. The spouse or child need not be liable for the debt. In the course of reaching this conclusion, the court in *Lockwood* stated that the Bankruptcy Code's "distinction ... between support and other issues determined by a divorce decree, or its later modification, is probably not in keeping with modern family jurisprudence." 148 B.R. at 48. The contrary view is represented by the

decision in *In re Linn,* 38 B.R. 762, (Bankr.9th Cir.1984). That case, and others similar, hold that such debts are dischargeable because the debtor does not owe them to a child, spouse, or former spouse. *See also In re Lanza,* 100 B.R. 100 (Bankr.M.D.Fla.1989).

This court agrees with the *Linn* decision. The Code provides that, to be nondischargeable, the debt must be owed to a spouse or child for maintenance or support. The debt must not only be for support, the only criteria applied by cases like *Lockwood,* it must also be owed to a spouse or child. One without the other is insufficient under the statute. Whether the policies underlying "modern family jurisprudence" might suggest this is not the way the provision should work is the sort of decision ordinarily to be made by Congress rather than the courts.

It is true that a judicial exception to the owed-to-a-spouse-or-child requirement has been created in some instances for attorney fees incurred by the ex-spouse in the divorce case which the debtor was ordered to pay. As noted in *Linn,* though, the exception appears to be based on the facts that the ex-spouse would remain liable for the fees even if the debtor-spouse were able to discharge them and that the ex-spouse needed for the debtor to pay them so the ex-spouse could maintain his or her ability to support himself or herself. That is not the situation in this case. Neither the debtor's ex-spouse nor their children will be liable for these fees if the debtor is able to discharge her obligation to pay them, so their support will be unaffected. Exceptions to discharge are to be plainly expressed and strictly construed in favor of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Houtman,* 568 F.2d 651 (9th Cir.1978). "Excluding these debts from discharge will not further the bankruptcy goal of a fresh start unburdened by old debts. *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938). Nor will it protect spouses, former spouses and children from being injured by a debtor's discharge." *Linn,* 38 B.R. at 763.

For these reasons, the court concludes the debtor's obligations to pay the fees owed to the defendants are dischargeable. Memorandum of Decision at 7–9. Judgment was entered on that same day. Burger and Gentry timely appeal.

### Standard of Review [3]

■ The question of whether summary judgment was appropriately granted is generally a question of law to be reviewed *de novo. See Oulds v. Principal Mut. Life Ins. Co.,* 6 F.3d 1431, 1436 (10th Cir.1993) ("We review the grant of summary judgment by the district court *de novo,* apply the same legal standard to the evidence in the record as did the district court."). This same standard applies when the district court, sitting as an appellate court to the bankruptcy court, reviews an order by the bankruptcy court granting summary judgment. *See In re Construction Alternatives, Inc,* 2 F.3d 670, 674 (6th Cir.1993) ("This court reviews *de novo* the decision of the district court reviewing a grant of summary judgment by the bankruptcy court."); *see generally Citizens Nat'l Bank & Trust Co. v. Serelson (In re Burkart Farm & Livestock),* 938 F.2d 1114, 1115 (10th Cir.1991) (in reviewing bankruptcy court decisions, appellate courts apply same standards of review that govern appeals in other cases).

### Analysis

■ The bankruptcy court did not err in its conclusion that the state court's determination of the issue of dischargeability bound it to that same determination. *See Jones v.*

*Jones (In re Jones),* 9 F.3d 878 (10th Cir. 1993).[4] Nevertheless, in light of the Tenth Circuit's decision in *In re Jones,* the court is compelled to disagree with the bankruptcy court's conclusion that Miller's debts to Burger and Gentry are dischargeable.

■ In *In re Jones,*[5] Debbie Jean Jones sought to discharge debt arising from post-custody proceedings between herself and her ex-husband, Alvin Jones. When the Jones divorced, they shared joint custody of their two boys. At some point the boys began to live with their father full-time. The Jones shared expenses equally. No court-ordered child support was in effect until 1987, when Debbie Jean Jones was ordered to pay child support and to carry health insurance for the boys.

In 1990, Alvin Jones filed a notice of delinquency asserting that Debbie Jean Jones was approximately $700 in arrears. Debbie Jean Jones then filed a motion to modify custody. Alvin Jones contested that motion. Alvin Jones was represented by John Mantooth, an attorney. The state court denied Debbie Jean Jones' motion for custody and ruled she was to pay all court costs and attorney's fees incurred by Alvin Jones in defending the motion. That amount was $6,000.

Debbie Jean Jones subsequently declared bankruptcy. The bankruptcy court ruled that the attorney's fees and costs were fully dischargeable under § 523(a)(5). The bankruptcy court noted that the fees were incurred in a custody action and held that a custody action is separate from a support action and therefore was not excepted from

---

3. The appellants have pointed to no case law supporting their argument that the bankruptcy court abused its discretion in failing to enter judgment as a sanction for the delay of the debtor's counsel in filing a response to their motion for summary judgment. Moreover, the appellants have articulated no real prejudice that they have suffered due to granting the extensions of time. In any event, the court does not base its reversal of the bankruptcy court's decision upon this argument advanced by the appellants.

4. In *In re Jones,* the Tenth Circuit stated: Whether a court-ordered obligation to pay attorney's fees incurred in connection with a custody dispute falls within the parameters of § 523(a)(5) is an issue of federal law. *See Sampson v. Sampson (In re Sampson),* 997

F.2d 717, 721 (10th Cir.1993). State law does provide guidance as to whether a debt is to be considered in the "nature of support." *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir.1986). However, "a debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Id.* 9 F.2d at 880.

5. *In re Jones* was decided by the Tenth Circuit after the bankruptcy court's decision in this case, but before either the appellants or the appellee filed their briefs in this case. However, neither the appellants nor the appellee cited this case in their respective briefs.

discharge pursuant to § 523. The district court reversed, holding that " 'the determination of child custody is essential to the children's proper "support" and that attorney's fees incurred in custody modification proceedings should likewise be considered as obligations of support.' " 9 F.2d at 880.

The Tenth Circuit agreed with the district court, concluding that Debbie Jean Jones' obligation to pay her ex-husband's attorney's fees was nondischargeable under § 523(a)(5). In pertinent part, the Tenth Circuit stated:

> Because the purpose of bankruptcy is to provide the debtor a "fresh start," statutory exceptions to discharge have been narrowly limited to those areas in which "Congress evidently concluded that the creditors' interest in recovering full payment of debts ... outweighed the debtors' interest in a complete fresh start." *See Grogan v. Garner*, 498 U.S. 279, 287, 112 L.Ed.2d 755, 111 S.Ct. 654 (1991). Further, the objector to discharge has the burden of proving by a preponderance of the evidence that a debt is not dischargeable. *Id.* at 291, 111 S.Ct. at 661. Congressional policy concerning 523(a)(5) "has always been to ensure that genuine support obligations would not be discharged." *Shine v. Shine*, 802 F.2d 583, 588 (1st Cir.1986); *see also Wetmore v. Markoe*, 196 U.S. 68, 77, 49 L.Ed. 390, 25 S.Ct. 172, 175 (1904) ("Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the [parent] to ... maintain and educate his [or her] children.").

9 F.3d at 880–881.

After considering cases from the Second, Fifth and Eighth Circuits, the Tenth Circuit held "that the term 'support' as used in 523(a)(5) is entitled to a broad application." 9 F.3d at 881. The Tenth Circuit concluded that court-ordered attorney's fees arising from post-divorce custody actions are deemed in the nature of support under § 523(a)(5) as being incurred on behalf of the child. 9 F.3d at 882.

Based upon its decision in *In re Jones*, it appears that the Tenth Circuit would conclude that the debts Miller owes to Burger and Gentry are nondischargeable under § 523(a)(5). In fact, in one of the cases cited favorably by the Tenth Circuit, *Peters v. Hennenhoeffer (In re Peters)*, 964 F.2d 166, 167 (2d Cir.1992), the Second Circuit affirmed the district court's order, *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. 291 (S.D.N.Y.1991), which held that attorney's fees incurred by the attorney appointed to represent the debtor's minor son in a custody dispute were nondischargeable. The court also notes that a majority of federal courts appear to have adopted an interpretation of § 523(a)(5) rejected by the bankruptcy court. *See, e.g., Dvorak v. Carlson (In re Dvorak)*, 986 F.2d 940 (5th Cir.1993); *Stacey v. Baillargeon (In re Stacey)*, 164 B.R. 210 (Bankr. D.N.H.1994) (guardian ad litem fees are in the nature of support and are nondischargeable under 11 U.S.C. § 523(a)(5)); *Tremblay v. Heintz*, 162 B.R. 60 (Bankr.D.Me.1993) (guardian ad litem fees are nondischargeable under 11 U.S.C. § 523(a)(5)).

Although the bankruptcy court correctly noted that neither Dr. Miller nor the children will be liable for Sharon Miller's portion of the appellants' fees if she were able to discharge her obligation to pay those fees, it appears that fact does not change the ultimate determination that Miller's debts to the appellants are not dischargeable. *See In re Jones*, 9 F.3d at 880 (debtor responsible for all $6,000 of ex-husband's attorney's fees; attorney's fees nondischargeable); *Peters v. Hennenhoeffer (In re Peters)*, 133 B.R. at 293 (debtor required to pay "one-half" of attorney's fees; attorney's fees nondischargeable); *In re Stacey*, 164 B.R. at 211 (debtor to pay half of guardian ad litem fees; guardian ad litem's fees nondischargeable); *In re Tremblay*, 162 B.R. at 61 (debtor ordered to pay all guardian ad litem's fees; guardian ad litem's fees nondischargeable); *but see St. Laurent v. Shearer (In re Laurent)*, 144 B.R. 932 (Bankr.S.D.Fla.1992) (because debtor did not satisfy burden of proving that ex-spouse would no longer be personally obligated for attorney's fees if debtor was discharged, debt was within § 523(a)(5) and therefore nondischargeable).

In sum, although the bankruptcy court has articulated many salient arguments supporting its decision, the court is compelled to conclude that Miller's debts to the appellants are nondischargeable under § 523(a)(5). It appears clear that the fees charged by both Burger and Gentry are in the nature of "support" under the Tenth Circuit's interpretation of § 523(a)(5).

IT IS THEREFORE ORDERED that the bankruptcy court's September 29, 1993, memorandum of decision, concluding that the fees owed by Sharon N. Miller to Gerald Gentry and Micheline Z. Burger are dischargeable, is reversed. The Judgment on Decision entered by the bankruptcy court on September 29, 1993, is reversed and the case is remanded for proceedings consistent with this opinion.